In the Matter of H.M.L.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-303-CV

IN THE MATTER OF H.M.L. 

------------

FROM THE 97
TH
 DISTRICT COURT OF MONTAGUE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In two issues, Appellant H.M.L. complains that the trial court abused its discretion in modifying his disposition and committing him to T.Y.C.  Because we hold that the trial court did not abuse its discretion, we affirm the trial court’s modification and commitment order.

H.M.L. was adjudicated for aggravated sexual assault of his stepsister and placed on probation.  The probation order included the following language:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Juvenile, [H.M.L.], comply with and fully abide by the rules and policies of the Youth Center of the High Plains [“the center”] and fully and completely engage in all aspects of the program including class attendance, physical training, counseling sessions and all other character building activities until such time as he successfully completes the course of the program or until further order of the court.

The order further provided in pertinent part:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that H.M.L. . . . be and is hereby placed on probation . . . upon the following reasonable and lawful terms and conditions:

That the said juvenile shall:

(a) . . . ;

(b) be placed at the Youth Center of the High Plains[,] the child will remain at said Facility until successfully discharged and while in placement, be in the care and control of the placement facility director and shall abide by the rules set forth by the custodians;

(c) . . . ;

(d) abide by all rules and regulations of the placement facility at all times; [and]

(e) submit to counseling and continue all programs prescribed by the placement facility until successfully discharged.

Evidence showed that H.M.L. was unsuccessfully discharged from the center.  When he entered the center, H.M.L. received a printed version of the behavior norms that all residents were expected to follow.  A resident must earn a minimum point requirement to progress in each program.  Additionally, a resident must pass a minimum number of behavior contracts on a weekly basis to progress.

The evidence showed that H.M.L. first entered the intensive intervention program, designed to help residents follow directions of authority and learn basic social skills and to introduce concepts of anger control and rational thinking.  H.M.L. was noncompliant and put forth little effort to complete the program, which typically takes a resident ninety days.  After H.M.L. had been in the program 153 days (twenty-two weeks) without completing it, the staff at the center chose to place him in the Constructive Living Unit (“CLU”) in the lowest phase.  He did not attain this transfer through any meritorious efforts of his own.  At the time of the transfer, H.M.L. had earned the minimum acceptable point level for only 43 of the 153 days and had passed his behavior contract only 5 times out of the 22 weeks.

In the CLU, H.M.L. ignored staff’s directions and continued his noncompliance.  He was personally warned several times by Rick Smithson, the lead counselor and program specialist at the center, that his refusal to work the CLU program could result in an unsuccessful discharge.  He was also warned by the entire treatment team on two different occasions.  Out of the 70 days he spent in the CLU, H.M.L. only earned the required minimum point level for 17 days; he only passed his behavior contract twice during the ten weeks.  The staff members at the center agreed that he needed to be unsuccessfully discharged.  During H.M.L.’s entire time at the facility, he never earned a phase movement, or promotion.  He did, however, receive nine disciplinary interventions for aggressive behavior.

Additionally, H.M.L.’s sex offender therapist had provided information to Smithson that H.M.L.’s behavior was disruptive during group therapy, that he did not complete assignments, and that he breached his agreement to pass a polygraph regarding the sexual assault of his stepsister.

Smithson stated that H.M.L. would be a risk to the community because of his narcissism, aggression, refusal to take responsibility for his actions, resistance to authority, lack of remorse, minimizing of the impact of the assault on his stepsister, self-justifying, and lack of candor regarding his delinquent conduct.  Smithson recommended that H.M.L. be placed in a secure correctional environment with sexual offender treatment.

After H.M.L. was unsuccessfully discharged, the State filed a petition to modify his disposition based on the alleged violations of the conditions set out above.  All of the above evidence was admitted.

Additionally, the Montague County juvenile probation officer, Rebecca Dickson, testified that T.Y.C. was the best place for him.  Her reasons included the facts that he is a high-risk sex offender, his mother had made no arrangements to have the stepsister removed from the home, the placement in  the center had not worked, and the other potential programs she knew of, one of which was no longer under contract with Montague County, were not desirable.  She also testified that T.Y.C. has a sex offender treatment program that is supposed to be one of the best in the State.  She admitted that it is operating at full capacity but stated that eventually H.M.L. would get admitted into the program.  In her report, she provided that H.M.L.

is in need of a highly structured environment which will offer a long term sex offender program.  Since [H.M.L.] is considered to be a high risk candidate[,] it is recommended that he be modified to a Sanction Level 6 and be placed in the Texas Youth Commission.  It is also recommended that [he] register as a sex offender.

In his first issue, H.M.L. contends that the trial court abused its discretion in finding that H.M.L. violated the probation order because there is insufficient evidence to support the trial court’s findings that H.M.L. violated paragraphs (b), (d), and (e).  In his second issue, Appellant complains that the evidence is insufficient to support the modification and commitment to T.Y.C.  We will not reverse the trial court's decision unless the court abused its discretion.
(footnote: 2)  An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.
(footnote: 3)  Based on our review of the evidence detailed above, we cannot say that the trial court abused its discretion in finding that Appellant had violated the probation conditions set out above.  Consequently, we also cannot say that the trial court abused its discretion in modifying the disposition.  Finally, based on all the evidence about H.M.L., the risks he poses to the community, and the options and resources available, we cannot say that the trial court abused its discretion in committing H.M.L. to T.Y.C.  We overrule both of H.M.L.’s issues.

Having overruled H.M.L.’s two issues, we affirm the modification and commitment order of the trial court.

LEE ANN DAUPHINOT

JUSTICE

PANEL B:  DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  June 3, 2004

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
In re C.J.H.
, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.).

3:
Id.